Phyllis SWETZOF, in her capacity as Clerk of the City of St. Paul, Alaska, and the City of St. Paul Alaska, Appellants,

v.

Anthony PHILEMONOFF and Nicolai Melovidov, Appellees.

No. S–13165.

Supreme Court of Alaska.

Sept. 15, 2008.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## Order

At issue in this case are decisions by Phyllis Swetzof, Clerk of the City of St. Paul, refusing to certify two proposed initiatives. The first proposal (Application I) stated:

> The qualified voters of the City of Saint Paul who have signed the attached pages of this application for petition hereby request that the following measure be submitted to the qualified voters of the City of Saint Paul pursuant to Alaska Statute § 29.26.100.
>
> AN ORDINANCE OF THE PEOPLE OF THE CITY OF SAINT PAUL PROVIDING THAT THE CITY OF SAINT PAUL SHALL NOT ENGAGE IN THE SALE OR DELIVERY OF ELECTRIC POWER TO RETAIL CUSTOMERS AND REQUIRING THE CITY TO ACTIVELY PROMOTE RENEWABLE ENERGY
>
> BE IT ORDAINED BY THE PEOPLE OF THE CITY OF SAINT PAUL:
>
> - Section 1. The City of Saint Paul shall not engage in the sale or delivery of electric power to retail customers and shall actively support renewable energy for sale to retail customers.
> - Section 2. This ordinance shall take effect 120 days after certification of the election. [Exc. 14]

Swetzof refused to certify this proposal finding, among other reasons, that it did not meet the "enforceable as a matter of law" requirement of AS 29.26.110(a)(4) because the City could not discontinue retail electric service without applying for and obtaining the approval of the Regulatory Commission of Alaska (RCA).

The second proposal (Application II) was submitted in response to Swetzof's rejection of the first. It provided:

> The qualified voters of the City of Saint Paul who have signed the attached pages of this application for petition hereby request that the following measure be submitted to the qualified voters of the City of Saint Paul pursuant to Alaska Statute § 29.26.100.
>
> AN ORDINANCE OF THE PEOPLE OF THE CITY OF SAINT PAUL PRO-

VIDING THAT THE CITY OF SAINT PAUL SHALL NOT ENGAGE IN THE SALE OR DELIVERY OF ELECTRIC POWER TO RETAIL CUSTOMERS.

BE IT ORDAINED BY THE PEOPLE OF THE CITY OF SAINT PAUL:

- Section 1. The City of Saint Paul shall not engage in the sale or delivery of electric power to retail customers.

- Section 2. This ordinance shall take effect 120 days after certification of the election and shall provide that the City [of] St. Paul shall take all necessary steps including obtaining regulatory approval to discontinue electric utility service.

- Section 3. This ordinance is subject to the Regulatory Commission of Alaska's approval of the City of Saint Paul's discontinuance of electric utility service. [Exc. 24]

When Swetzof refused to certify this proposal, the sponsors of both proposals, Anthony Philemonoff and Nicolai Melovidov, filed suit in the superior court challenging her rulings. The superior court found that Swetzof had erred and ordered her to certify both applications. Swetzof has appealed this ruling. An election will be held in the City of Saint Paul on October 7, 2008. At oral argument, counsel notified this court that, for reasons unrelated to this dispute, Application I but not Application II will be on the ballot.[1] Swetzof requested an expedited hearing on appeal and this court has granted her request.

Having considered the parties' briefs and argument, the court concludes that Swetzof correctly refused to certify Application I. Application I would not be enforceable as a matter of law because the City of Saint Paul could not simply stop selling or delivering electrical power to retail customers within 120 days after certification of the election. Instead, permission to discontinue or abandon electric service or to sell the utility to another entity would have to be sought and obtained from the RCA. Proceedings conducted by the RCA require notice to and an opportunity to be heard for interested persons. The proceedings may be complex, expensive, and time consuming, and their outcome is uncertain.

The superior court held that Application I should be considered to be "subject to the implicit condition that the RCA will approve the City's application, either to cease retail electric utility service or transfer its certificate." [Decision of 7/8/08 p. 15] But given the mandatory and time-limited language of Application I, the nature of the proceedings that must take place before the RCA, and the uncertainty of the ultimate result, we believe that the judicial imposition of an implicit condition of RCA approval is both unjustified and potentially misleading to the electorate.[2]

Since we conclude that Application I fails under the "enforceable as a matter of law" standard expressed in AS 29.26.110(a)(4), the judgment of the superior court is **REVERSED** to the extent that it required Swetzof to certify Application I. Swetzof is authorized to remove the proposed initiative from the October 7, 2008 ballot.

---

1. But whether Swetzof properly refused to certify Application II remains as an issue in this case.

2. The superior court relied on a 1965 decision from an intermediate appellate court in California, *Hughes v. City of Lincoln*, 232 Cal.App.2d 741, 43 Cal.Rptr. 306 (Cal.App.1965), as justification for its conclusion that the proposal was implicitly subject to needed approval by the RCA. In *Hughes* the petition sought the cessation of fluoridation by the city's water utility. This could only be accomplished if the state board of public health issued an amended permit. The court in *Hughes* held that permission from state board should be considered an implicit condition of the proposed ordinance. But in so ruling the court suggested that state board approval of defluoridation would be routine since the state board was only concerned with water purity and potability, not dental health: "If the board finds that cessation of fluoride treatment will not make the water impure, unpotable or dangerous, it must permit cessation. This scheme of statutory regulation does not express any state policy, one way or the other, on fluoridation as a therapeutic measure." *Id.* at 748. *Hughes* is distinguishable based on the expected routine nature of the needed administrative approval there, in contrast to the complex and uncertain administrative approval required in this case.

This order applies only to Application I. An opinion will follow with respect to Application II.

Entered at the direction of the court.

Clerk of the Appellate Courts
/s/ Marilyn May
Marilyn May